23-7047 and 23-7066. Council, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, Kristen Kimmelman for Wendy Dawn Johnson. I'll try to reserve a couple minutes for rebuttal time. Ms. Johnson challenges the restitution order on three separate grounds. I'll primarily address the first ground regarding the District Court's methodology for calculating the lost income. And so the District Court used the lost income, which is authorized by statute, reimbursed victim for income lost by such victim as a result of the offense. Defendant objected to that calculation, not including an estimate for the personal consumption, which this Court recognized in Sarawak can be considered as long as it is not too speculative. In response, the government presented evidence that there was a non-speculative estimate of that personal consumption and that in this case, it was actually greater than the projected income lost. But the government's experts said that that personal consumption should be counterbalanced by the household contributions that the victim had, you know, to her spouse, cleaning, taking care of pets, running errands, whatnot, which the experts said have economic value. And while they might have some economic value, the restitution statute is different than wrongful death damages or other civil lawsuits where this expert might have testified, and it's rather narrow and specific. Again, it was just that reimbursement for the victim's lost income. Let me ask you about the statute. Does it provide any guidance, the statute itself, on whether courts may offset lost income with personal consumption? So the statutory language does not say that, but it's similar to at the beginning of the statute where it says the victim can be reimbursed for loss. This court has interpreted that to be the actual loss. And for example, when the cell phones were stolen, and I think it was Ferdman or Hudson, the actual loss to the retailer wasn't the retail value of those stolen cell phones. It's going to be the net lost profits. And so we're not looking at the greater number. We're looking at what was actually lost by the person. The statute says income lost, not net income lost. And that was the argument that the district court in the case that led to Sarawak had stated. And this court, albeit indicta, says that we don't agree with that statement. Personal consumption is something that can be considered. And the court even gave an example, the example being if there is an expert that could give a non-speculative consumption figure for, say, a 65-year-old retiree victim, then that is something that can be considered. And the Ninth Circuit in that unpublished case, Arthur, that's cited in the brief, went along with that reasoning in Sarawak. And actually, the government agreed in its brief in Arthur that the district court in that case had erred by not considering personal consumption. In that case, there had been no evidence. So it was remanded for the district court to consider what the reduction, the right number would be. And in the end, the court imposed a personal consumption reduction for that restitution. Sarawak doesn't quite answer our question, though, does it? And you just referred to the example that the court gave about when personal consumption might be relevant because it isn't speculative. And that was the 65-year-old retiree. And maybe you could speculate about what their consumption might be because perhaps they kind of know what their life has been and what it's going to be, what they might consume. But what the court didn't say is when would it be an abuse of discretion not to consider it. Correct. Or whether it's OK not to consider at all for whatever reason. Right. Some things we know from Sarawak and the court's other restitution cases, though, is that the focus of restitution is on actual loss and making the victim whole and to avoid a windfall. So I think in the circumstance that we have here, where at least the evidence that was presented by the government is that there is actually no lost income if you account for personal consumption, results in a windfall of $200,000 more of restitution to the victim. And I would say it makes sense because we know actual loss is the metric of what we're supposed to try to reach, that if a victim does not die from an offense, they're still having those personal consumption expenses throughout their life. They just aren't working maybe because of the offense. So they get reimbursed for income, but there is no personal consumption reduction there. But if the victim is deceased, they're not earning that income, but they also aren't incurring those personal consumption costs. And so it makes sense for that to be a factor that's considered. In Sarawak, it was speculative because it was an infant without enough guidance of what choices to put into that economic model of what is the projected personal income to be. Here, I think we have a 30-year-old victim, so there's some track record. And I think the expert's calculation was based on a two-and-a-half-year analysis from the time of her demise to that restitution hearing. And he applied a personal consumption reduction based on that. I would say if the court is doubtful whether that was enough of an analysis, then the solution is to remand for a fuller evidentiary hearing to consider that. I didn't see in the hearing any concern by the expert or the court that the expert's figures were speculative. It was more that they were going to be counterbalanced by this household contribution. But that household contribution figure we maintain is an improper consideration because it's not lost to the victim. It's lost to the other people in the victim's lives. Counsel, if the personal consumption amount is not speculative, it's ascertainable, at that point, is the district court required to offset personal consumption? Or does the district court still have some discretion as to what to do next? I think if it's ascertainable, then the district court needs to apply it so that there is the actual figure of actual loss. What significance is it that although they did not include any personal consumption, they did give a deduction for the insurance payment contrary to the statute? So do they balance out against each other? Well, numerically, they won't balance out because the insurance payment was $50,000. And so the restitution amount that was imposed was still $208,000. And then the district court subtracted by $50,000. And that, my understanding of the record— But you shouldn't have subtracted $50,000. The statute says you do not deduct for insurance payments in calculating restitution. I hesitate giving a position on that because that was not an error that we raised. But I think that the restitution amount imposed and calculated by the court was $208,000. And in order to not give a windfall to the victim's estate, the subtraction for the $50,000 comes in payment. Even though the statute says you must not include it? I confess I did not review that part of the statute. Ignore that statute. We're not going to bother with that statute. Well, even if it was, there would still need to be a personal consumption reduction, and it's not going to wash out. It's not going to balance out. Well, but isn't your position that the personal consumption deduction would eliminate restitution for lost income? Correct. And the victim still received the $50,000. So that would take care of the insurance? Right. The insurance has already been handed over to my amount. Well, they knew it had. Yes, that's correct. Our argument wouldn't affect the $50,000 from the insurance payment. And so if there are no further questions on the method of calculation, I can turn briefly to the speculation and the schedule of payments. So for the second argument that we raise against the order is simply that the amount was based on the victim's spouse testimony of what she believed the victim was earning. And the court found her credible that that's what she believed the victim was earning. But there was not documentary evidence or other type of evidence that buttressed that. The documents that we have show that she earned about $3,000, a little more than that, in one year. This is a clear error review issue, correct? This is a clear error review, and we would submit that relying on just the assumption, the belief of the victim's spouse when she had already been shown to have, you know, we all want to have great aspirations and think well of what our spouses do. So she believed that her spouse was going to complete that associate's degree. And in the end, the government withdrew with that request because she hadn't taken classes towards that degree in five years. So with that, the testimony from the victim's spouse was too speculative to support this amount. Well, you're really asking us to judge her credibility is what you're asking us to do. It's slightly nuanced, yes. We can't do that. We can't reassess the credibility of the victim. That is clear from this court's case law. Turning briefly to the payment schedule, if the court does not send this back or vacates the restitution order, we would ask for at least the order itself to be remanded so that it can be clearer whether immediate payment or the payment according to the schedule is what the court intended and authorized. The briefing suggests this was just standard language. Is that correct? That's my understanding from what was said at the restitution hearing because defense counsel specifically asked for the court to have restitution start after the time in BOP finished. And the court didn't reject that consideration. The court turned to the government and asked the government for its position. And the government said we should stick with the standard practice and the language that probation is used to. Nobody ever has to pay up all at once when they get out. That's been done hundreds of times where they get $100 or 10% or whatever it might be. Right. And BOP has an inmate financial responsibility. There's no real issue here on that particular issue, is there? Well, there is an error for requiring immediate payment when someone's resources show that she cannot do immediate. The standard language says that if you can't pay the 100%, you can pay it off in increments. And it tells them what it is. So I'm not familiar with that standard language. The standard language that's in this order, first the box is checked for immediate payment. And then there are special instructions that if the defendant's financial condition does not allow for immediate payment of restitution, then the monthly payments start after 60 days. Didn't the district court say that they won't start until after she's released from prison? Correct. But it's all conditioned on the if the defendant's financial condition does not allow for immediate payment. Your problem with that is that we don't know who's going to make that determination.  That's the problem. I think the simple fix is changing if to because. And because the defendant's financial condition shows she cannot pay, implement the schedule payment for after 60 days after release from BOP. Well, there's really no question that she cannot pay, and the district court's already found it's not going to impose a fine because she doesn't have the current ability to pay financially. And then it considers whether she might have the ability to pay in the future and says, yes, she might. So here's what I'm going to do. So we already have a finding in some sense, don't we, that she doesn't have the present ability to pay the full amount at once. Correct. We have that finding, and that's basically our argument. We have that finding. So immediate payment shouldn't be imposed. She doesn't have the financial resources for it. The payment schedule should be imposed. Well, is there any need at this point for this to be clarified? In other words, maybe the argument was a little stronger at the beginning, but here we are. Right. I think she has about 10 months left in BOP, so there is shorter timing left. We do know that BOP was taking payments from her account until we emailed them repeatedly the stay order. So I don't know what will happen if the stay order is lifted, if BOP will go back to requiring some funding. So I think there is still an injury here that can be fixed. But first, the restitution order should be vacated or at least remanded for the proper methodology to be used. Thank you, counsel. Thank you.  May it please the court. I am Luke Rizzo, an AUSA from the Eastern District of Oklahoma. The court should affirm the district court's restitution order, the reason being that the amount of restitution was determined based on the district court's factual findings, which were bolstered by clear-cut findings of witness credibility. That is all on the record. Well, isn't it usual to include a personal exemption or the personal expenses deducted from the supposed earnings? Well, whether it is usual or not, I mean, I suppose I would— Testifying in wrongful death cases and in restitution cases always includes a deduction for personal consumption. Well, personal consumption, it could be part of a restitution calculation, but it doesn't have to be. And that's based on Sarawak, this court's own opinion. Sir, I was on Sarawak. I'm familiar with it. Yes. Yes, Your Honor. So in that case, as you well remember, personal consumption, it wasn't deducted, based on the circumstances of that case and the discretion of the district court, which, again, in a restitution hearing and a restitution situation when the final order is being calculated, that's abundant discretion. Defendant maintains that the court abused that discretion for not using a personal consumption amount or not deducting one from the anticipated lost future earnings total, but— Well, it wasn't deducted there because it was speculative. But is it speculative here? Well, Your Honor, I suppose it could be speculative. What happened was the district court analyzed the evidence that it was presented with, and the government's expert witness, you know, as counsel alluded to, we have the personal consumption amount, and the expert determined that if he included that amount in his own estimation, then he would probably balance it out with a household contribution estimation as well, which essentially means they would kind of wash each other out. But how does that make sense under the statute when restitution is for the victim's losses and household services wouldn't be a loss to the crime victim's losses, but the household services would not have been a loss to Stephanie. It's a loss to Christy. And the statute says it's losses to the victim, Stephanie. So why was the district court correct to rely on that? It seems to be in conflict with the statute. Well, Your Honor, I think there's two parts to that answer. And, again, the VWPA allows courts to grant restitution for the amount of loss sustained. The MVRA describes lost income. Lost to the victim of the crime. Yes, Your Honor, and to the second part of it. The household services that were lost were lost not to the victim of the crime, but to the spouse of the victim. Well, the statute also points to the fact that when the victim is deceased, the estate could stand in its place. So, naturally, all of the losses are going to be from the victim's income. You know, the victim is the victim of the crime, whether they're incapacitated. And the spouse, the surviving spouse, may be standing in the victim's estate or the surviving spouse, but it's still losses to the victim, not to her. Well, so the spouse is essentially standing in the place of the victim. Yeah, but the losses are the victim's losses, not hers. She gets what the losses were to the victim, who was Stephanie. That's her lost income. The household services weren't lost income to her. Well, Your Honor, the district court, in its order— I mean, I thought maybe you were going to make the argument that this is all part of exercise of discretion, but it sounds to me like you're saying that this complies with the statute. I don't understand that argument. The statute's pretty clear, isn't it, that restitution is based on victim loss? Well, Your Honor, the victim's loss is ultimately what Dr. Clark, the expert witness, is evaluating. That's right. He does evaluate household contributions, and to the court's point, yes, that is the district court. It considered all of that. But how is Dr. Clark's analysis compliant with the statute? Well, whether his or not— He might, as the district court said, have been credible, but he also might have been wrong to be saying, well, we're not going to take out an offset because of the household services. Wait a minute. Household services aren't covered by the statute. Well, there's also the actual loss that the victim was making income as well, and we know that from the testimony of her spouse, Christy. That's the part about the house cleaning, and that effectively gets us to the figure of around $10,000 to $12,000. So that is the victim's income that she was making. The district court found Christy to be a credible witness. I think we all understand that. I think the question is the district court here never really considered the personal consumption credit, and it didn't do so because it relied upon the expert's testimony, and the expert said, I only look at personal consumption credit and the replacement household amount. In civil cases, I don't look at—it's not relevant here. I don't add it in or subtract it here in restitution cases, and I think what Judge Matheson is saying is that's really not correct because one goes to the victim's loss and the other goes to the spouse's loss, and so if we assume that the court should have considered the evidence of the credit for the victim's use, consumption, that didn't happen here, and isn't that an abuse of discretion not to consider it at all? Because that's what happened here. It really never got considered at all. We don't know whether the district court thought it was speculative. We don't know if the district court thought the expert's figures on that were correct. He just didn't consider, or the district court didn't based on the expert's testimony, which may have been legally incorrect. Well, Your Honor, personal consumption amount, the district court, whether or not it considered it or whether that number would have been speculative, we don't really know. It's not exactly on the record. We have Dr. Clark's— We don't know. That's the problem. We have Dr. Clark's evaluation of it, and the court adopted that evaluation and found it reasonable. To the question that was posed earlier— Well, if you were to say that it wasn't reasonable, if it wasn't reasonable for the district court to rely on the expert's testimony on this point, where he combined those two elements and said, I'm just not going to consider either, if that wasn't reasonable, what should we do with this case? Should we remand it for the district court to consider the personal consumption amount? Or if there was, whether it was speculative or whether there should be a credit? Well, Your Honor, the government's position is that personal consumption amount, that's not in the statute either. Household contributions and analysis of that as loss to the victim's spouse as opposed to actual income, the government concedes that's not part of the statute, but the government also points out a deduction for personal consumption. That's not in the statute either. You're saying it can never be deducted? It certainly could be deducted, Your Honor. That's what Sarawak said. That's what Sarawak said, of course, Your Honor, yes. So I guess the government's counterpoint would only be lost household contributions. It's not in the statute either. Whether or not the court or, you know, the court wasn't allowed to consider it, I don't—the government's position is that's not really the issue here. It's just about the discretion that the court had to make its determination, to make the determination of the proper amount of restitution. Now, you know, questioning the expert witness, understandable, but at the same time the district court didn't question that analysis. The district court found it credible. It found, you know, Dr. Clark's estimation to be a reasonable one, a conservative one based on all the evidence that was on the record, and that's where the government comes from. You know, the government is simply supporting the district court's decision, and it's, you know, explicitly stating on multiple occasions that it found both of the government's witnesses to be credible, again, as alluded to earlier, a notion and an aspect of the case that is practically unreviewable here. And it should also be—I think it's fair to infer the court made those credibility findings quite clear on purpose, and I believe it's even mentioned in the record. So the real issue here is whether this decision for the restitution amount was arbitrary and capricious. You know, I mean, that's the standard. Was it an abuse of discretion? Was there any sort of legal misapplication? And there might have been, is what we're asking you. If the district court said, I'm relying on the expert's testimony about this, and let's say the expert's testimony was legally incorrect, then wasn't it an abuse of discretion to rely on that expert's testimony? No, Your Honor. It wouldn't be an abuse of discretion. Why not? Because there's other evidence on the record as well. I mean, again, the actual— But the district court told us what it was relying on. Well, the district court certainly said and made clear it was relying on Dr. Clark's expert analysis and his figure. But his figures aren't solely based on whether or not there was a personal consumption deduction, the amount of household contributions. It wasn't solely based on that. There were multiple parts of that. You know, the whole report itself, which is on the record, makes that clear. Well, then why wouldn't it make sense to send it back and get this sorted out and take out the part that the expert and the court shouldn't have relied upon and then look at what's left? Well, Your Honor, it shouldn't— it's difficult to question the district court's discretion here when there is no clear— there's no legal misapplication. I don't really—I guess the government would effectively stand by its position. It's an abuse of discretion. That's the standard. And the government struggles to see— But a legal error is an abuse of discretion. Well, the government doesn't see there that there is an illegal error, a legal misapplication. So it's your position, then, that a deceased victim's provision of household services is covered by the statute as a component of victim loss for restitution. That's your understanding of the law. Well, not just the law, Your Honor, not just the statutes. I know we've spoken about the statutes and what they— Well, you've at least got to say that's permitted under the statute, because if it isn't, then we've got legal error. So you must be saying that it's okay for the district court, in the exercise of its discretion, to consider lost household services as part of the victim's loss. Of course, Your Honor. And what I meant to say was, you know, the goal of restitution is to make the victims whole. That's taken from a case, you know. That's taken from the United States v. James. So to make the victims whole, the victims of criminal conduct whole. Well, the defendant here is suggesting that in the case of a deceased victim and lost income, you would be—if you don't offset for personal consumption, you're doing a lot more than making the spouse whole. You're doing a windfall. But, Your Honor— Why isn't this a windfall? Because in a restitution case, it's case-specific. It's all about these facts. It's all about Christie's testimony. You know, she's testifying about the loss that she has sustained, how her income and her— Yeah, but the statute says it's the victim's loss. It's the loss the victim sustained, not the loss that Christie sustained. Well— She gets to have what Stephanie sustained. It's the lost income. Well, what I'm referring to—you know, there's two parts here when we're talking about whether or not there's a windfall for Christie, the surviving spouse. You know, it's $100 a month, effectively. That's the restitution order. And Christie does describe, you know, her spouse died, the victim died, and then she describes how the household is different. The household income is different, effectively. I think we're kind of going around in circles at this point, but before you sit down, do you oppose a remand to the district court to clarify whether there is an immediate payment obligation? Your Honor, there's no immediate payment obligation. The order is clear. The record's clear. She has 60 days after she's released from prison to begin payment. The government's not clear why this is an issue and believes it's effectively moot. And, you know, there's no— Do you agree that it wasn't clear at the time that judgment was entered? The government doesn't agree with that. The government thinks it's written down, it's spoken on the record. There's multiple sources for the defendant to glean what is exactly meant by it. You know, it's an immediate payment, but if the defendant doesn't have the financial resources to pay that, she will begin payment of $100 or 10% of her monthly income 60 days after her release from federal prison. She doesn't have—you know, the BOP cannot collect it, cannot alter it. The court didn't delegate any authority for the BOP to do that, and that's the government's position on that. Thank you, counsel. Thank you, Your Honor.